**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 04 CR 888 |
| v. | ) | |
| | ) | Honorable Charles R. Norgle |
| JERRELL BENFORD | ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

This case comes before the Court on limited remand from the United States Court of Appeals for the Seventh Circuit, which remanded the case for the Court to determine whether it wished to resentence the Defendant Jerrell Benford ("Benford"), a crack offender, in view of United States v. Kimbrough, 128 S.Ct. 558, 575-76 (2007). Prior to making this determination, however, the Seventh Circuit suggested that the Court allow Benford the opportunity to move for resentencing in light of the Sentencing Commission's decision to make retroactive a 2007 amendment that decreased the base offense levels for crack cocaine offenses. On August 13, 2008, in line with the order of remand, the Court allowed Benford to move for resentencing. The Government responded in turn. Upon review of the parties' submissions, and for the following reasons, the Court now declines to reduce Benford's sentence under the 2007 amendment or pursuant to the United States Supreme Court's decision in Kimbrough.

## I. BACKGROUND

### A. FACTS

On December 6, 2006 authorities charged Benford in a five-count superseding indictment with one count of conspiracy to knowingly and intentionally possess with intent to distribute more than 500 grams of mixtures containing cocaine and more than 50 grams of crack cocaine

(Count One), two counts of distributing crack cocaine (Count Two and Three), one count of possessing with intent to distribute cocaine (Count Four), and one count of possessing with intent to distribute crack cocaine (Count Five). Benford originally pleaded not guilty to all five charges. Then, on February 16, 2007, without a plea agreement, Benford withdrew his original plea and pleaded guilty to Count One of the superseding indictment.

Prior to sentencing, the United States Probation Office ("USPO") submitted a presentence investigation report ("PSR"), which listed Benford's adjusted offense level at 38. In arriving at this number, the USPO started with a base offense level of 38. Thereafter the USPO gave Benford a two-point increase based on his leadership role in the underlying offense, as well as a two-point reduction for acceptance of responsibility. This reduction of course cancelled out the two-point increase and resulted in an adjusted offense level of 38. The USPO next assigned Benford 12 criminal history points, which placed him in Criminal History Category V. In the end, based on his adjusted offense level and Criminal History Category, Benford's advisory Sentencing Guidelines range was 360 months to life imprisonment.

On September 12, 2007 the Court conducted a sentencing hearing, during which Benford objected to the USPO's criminal history calculation and the quantity of drugs that the USPO used to calculate his base offense level. With regard to his base offense level, Benford argued that the government failed to establish that Benford distributed a quantity of crack cocaine greater than 1.5 kilograms and, therefore, the correct base offense level was 36. In response, the government introduced at the sentencing hearing four witnesses to corroborate the quantity of crack that Benford distributed.

The government first called FBI Agent Larry Brotan. He testified that as part of his investigation he made several controlled purchases of crack cocaine from Benford. He also

testified that, based in part on those purchases, the government obtained authorization to intercept Brotan's cellular telephone calls. During one 30-day authorization period, the government intercepted 4631 phone calls over Benford's cell phone, 1775 of which were drug-related.

The government also called Benford's ex-girlfriend, Sharon Jackson. She testified that she lived with Benford for approximately 14 ½ years prior to his arrest. This included the entire period during which the charged conspiracy took place. She also testified that Benford sold crack cocaine during the entire time that she lived with him. According to Jackson, the amounts that Benford sold varied, though she observed him sell, on average, approximately two kilograms of crack cocaine per month. Sales of this quantity and duration took place during the entire time that she lived with Benford.

The government next called FBI Special Agent Mike Biegalski, who presented a summary of the phone calls that the government intercepted from Benford's telephone. His testimony revealed that during one 10-day period between April 25, 2003 and May 3, 2003 Benford discussed the sale of 681.5 grams of crack. This calculation substantiated Sharon Jackson's testimony as to the amount of crack she observed Benford distribute.

Finally the government called a Lake County, Illinois Sheriff's Deputy, who introduced a videotape of an incident in which he pulled over Benford in an attempt to arrest him. On the video, Benford is seen striking the Deputy, fleeing the scene and throwing a bag of crack cocaine into a nearby field. The Deputy testified that the law enforcement officers later recovered the bag of crack that Benford threw. To further corroborate this testimony, the government introduced a telephone call that they intercepted, during which Benford relates how he fled from

the Deputy and disposed of the crack, but returned to the scene the next day in an attempt to retrieve the drugs.

Considering the evidence that the government presented, the Court found that the drug quantity listed in the PSR was reliable. Specifically, the Court found that based on the evidence, "the Defendant was a substantial seller of crack cocaine over an extended period of time." The Court commented further, "the evidence in this case is very solid, and within the totality of the record it is overwhelming in terms of how much crack the defendant was dealing with." And, with respect to the government's chart showing the quantity of drugs that Benford discussed over the telephone during a 10-day period, the Court noted, "[a] minor extrapolation would certainly take this well over 1,500 grams or 1.5 kilograms of crack cocaine, which supports the base offense level of 38, the highest base offense level available."

When sentencing Benford, the Court expressly took into account the relevant § 3553 factors and, in the end, overruled Benford's objections. The Court agreed with the USPO's adjusted offense level of 38 and determined that Benford fell within Criminal History Category V, thereby giving Benford an advisory Guideline range of 360 months to life imprisonment. The Court imposed a low-end Guideline sentence of 360 months, followed by five years supervised release.

## B. PROCEDURAL HISTORY

On September 19, 2007 Benford filed a notice of appeal, through which he requested a limited remand, arguing that the Court erred when it sentenced him without considering the disparity in the sentencing guidelines' treatment of crack and powder cocaine. The government agreed that a limited remand was appropriate pursuant to United States v. Taylor, 520 F.3d 746, 748-49 (7th Cir. 2008). On August 4, 2008 the Seventh Circuit remanded the case to this Court.

On limited remand, the Court's determination is twofold. First the Court shall decide whether a reduction in Benford's sentence is warranted under the Sentencing Commission's 2007 amendment to the guidelines that decreased the base offense levels for crack offenses. Next the Court shall determine whether Benford's sentence should be reduced in light of United States v. Kimbrough, 128 S. Ct. 558, 575-76 (2007). The parties have fully briefed these issues, and the Court shall discuss them in turn.

## II. DISCUSSION

### A. STANDARD PURSUANT TO 18 U.S.C. § 3582(C)(2)

Generally a sentencing court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); see United States v. Goode, 342 F.3d 741, 743 (7th Cir. 2003). Section 3582(c)(2) creates a limited exception to this rule, and allows but does not require a district court to reduce a term of imprisonment that the Court imposed based on a sentencing range that the Sentencing Commission subsequently lowered. 18 U.S.C. § 3582(c)(2); United States v. Cunningham, 554 F.3d 703, 707 (7th Cir. 2009). It is important to note, however, that this authority is not unyielding. Indeed there are two limitations that the Court must consider.

First, the Sentencing Commission has identified a number of specific amendments that district courts may apply retroactively pursuant to their authority under § 3582(c)(2). These amendments are listed in Section 1B1.10 of the Sentencing Guidelines. If the amendment is not listed in Section 1B1.10 of the Guidelines, district courts may not reduce a prisoner's term of imprisonment pursuant to that amendment. This case concerns Amendment 706, which reduced the base offense level for most crack offenses. In particular, the amendment reduced the guideline range for crack offenses by two levels. The guidelines previously applied offense level 38 to all crack offenses that involved a quantity of 1.5 kilograms or more. Now, after the

amendment, offense level 38 only applies to offenses involving a quantity of 4.5 kilograms or more. Thus, when the quantity is less than 4.5 kilograms, but more than 1.5 kilograms, the offense level is now 36. See United States v. Russell, No. 09-1121, 2009 WL 1649159, at *1 (7th Cir. June 11, 1009) (explaining the amended guidelines).

In this case, there is no dispute that effective March 3, 2008 the Sentencing Commission included Amendment 706 on the list of amendments found in Section 1B1.10. Thus, district courts may apply Amendment 706 retroactively, and there is no issue with respect to the first limitation above. See White v. U.S., No. 99 CR 545, 2009 WL 1916241, at *2 (N.D. Ill. July 2, 2009) (citing U.S.S.G. § 1B1.10(c)).

But another limitation exists. Section 1B1.10 also states that a reduction pursuant to a subsequent amendment is not authorized if "an amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline range." In other words, should other factors cancel the effect of a subsequent amendment, the court is not authorized to reduce the term of imprisonment under the amendment that the defendant seeks to invoke. See U.S. v. Berry, 96 CR 40071, 2009 WL 2371532, at *2 (S.D. Ill. July 30, 2009). Whether this second limitation applies in this case is directly at issue.

## B. DEFENDANT'S MOTION PURSUANT TO 18 U.S.C. § 3582(C)(2)

The inquiry starts with the applicable statutory language, which the Court briefly discussed above. Section 3582(c)(2) requires that the district court only reduce a defendant's sentence if the reduction is consistent with the Sentencing Commission's applicable policy statements. In Section 1B1.10(a)(2)(B), the Sentencing Commission stated: "A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if . . . an amendment listed in subsection (c) does not

have the effect of lowering the defendant's applicable guidelines range." U.S.S.G. § 1B1.10(a)(2)(B). It follows, then, that if the defendant's applicable guidelines range remains unaffected by the subsequent amendment, then the district court may not reduce the defendant's sentence. United States v. Forman, 553 F.3d 585, 590 (7th Cir. 2009). This is precisely the situation before the Court.

At the sentencing hearing, the government presented ample evidence to show that Benford was responsible for distributing well over 4.5 kilograms of crack cocaine for a substantial period of time. Again, the testimony showed that Benford sold approximately two kilograms of crack per month for several years, including the period of the charged conspiracy, which lasted from approximately January 2003 through October 2004. In considering this, the Court noted that "within the totality of the record it is overwhelming in terms of how much crack the defendant was dealing with." Further, based on the government's evidence, the Court found that a "minor extrapolation would certainly take this well over 1,500 grams or 1.5 kilograms of crack cocaine . . . ."

But 1.5 kilograms, the benchmark under the previous Guidelines, was not the quantity that Benford sold. The record shows that he sold in excess of 4.5 kilograms. Given this amount, Benford would not benefit from Amendment 706. See United States v. Woods, 581 F.3d 531, 538 (7th Cir. 2009) ("[I]f the defendants were responsible for more than 4.5 kilograms of crack cocaine, the amendments do not benefit them."); Forman, 553 F.3d at 590 (noting that Amendment 706 "affects only defendants who are responsible for distributing fewer than 4.5 kilograms of crack cocaine"); Russell, 2009 WL 1649159, at *1 (holding that the defendant could not "benefit from Amendment 706 because that amendment affects only defendants who are responsible for distributing fewer than 4.5 kilograms of crack cocaine").

Because the record shows that Benford sold in excess of 4.5 kilograms of cocaine, Amendment 706 does not apply, and the applicable offense level remains at 38. Benford is not eligible for a sentence reduction. His request is therefore denied.

## C. REDUCTION PURSUANT TO KIMBROUGH

In Kimbrough, the Supreme Court held that a district court judge may take the crack/cocaine powder disparity into consideration in imposing a defendant's sentence. See United States v. McKinney, 543 F.3d 911, 913 (7th Cir. 2008). This decision, in essence, clarified that "that a policy disagreement with the crack/powder disparity was not an impermissible factor" in the court's sentencing determination. See U.S. v. Bell, No. 07-3806, 2009 WL 3644327, at *7 (7th Cir. Nov. 5, 2009) (publication pending). Thus for Benford, who the Court sentenced prior to Kimbrough, the Seventh Circuit granted a limited remand to allow the Court to determine whether it "would be inclined to reduce [the defendant's] sentence under the dispensation granted sentencing judges by Kimbrough." United States v. Taylor, 520 F.3d 746, 748-49 (7th Cir. 2008). For the following reasons, the Court finds that it is not so inclined.

At Benford's sentencing hearing, the government established that Benford was a considerable seller of crack cocaine. There was no evidence that Benford ever distributed powder cocaine, nor was there evidence that the USPO considered a quantity of powder cocaine when calculating Benford's offense level. Even using a conservative analysis of the amounts of crack that Benford distributed, it was clear that over time he sold well in excess of 4.5 kilograms of crack, the threshold to yield an offense level of 38. The Court, indeed, after hearing the evidence, commented that "this is a massive drug operation, [that involved] huge amounts of controlled substances, [and] hundreds or more purchases of crack cocaine."

Even considering the 18 U.S.C. § 3553(a) factors, the Court finds that a reduction of Benford's sentence is unfounded. The Court cannot stress enough that the evidence clearly showed that Benford took part in a significant drug operation over a substantial period of time. He was not a small-time drug dealer, but a significant seller of crack cocaine throughout the Chicagoland area. Moreover, he had been convicted of numerous prior drug offenses, which justified a Criminal History category V. In this light, taking into account the evidence submitted at Benford's sentencing hearing, the Court finds that it would have imposed the same sentence, already at the low end of the guidelines range, even if it had considered the crack/powder disparity when applying the § 3553(a) factors. There is no justification to reduce Benford's sentence pursuant to <u>Kimbrough</u>. His sentence of 360 months shall stand.

### III. CONCLUSION

For these reasons, Benford's motion to modify his term of imprisonment on limited remand is denied.

IT IS SO ORDERED.

ENTER:

CHARLES R. NORGLE, Judge
United States District Court

DATED: _____ 11/9/09