IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Case No. 04 CR 888-4 |
| | ) | |
| JERRELL BENFORD | ) | |

### MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, as emergency judge:[1]

In 2004, Jerrell Benford was charged, along with others, with narcotics crimes. He was arrested on May 24, 2005—about fifteen years ago—and has remained in custody since that date. In February 2007, Benford pled guilty to a charge of conspiracy to possess over 50 grams of crack cocaine with intent to distribute. At the time, the governing statute imposed a mandatory minimum sentence of 10 years imprisonment and a maximum sentence of life imprisonment for crack cocaine offenses involving more than 50 grams.

After conducting an evidentiary hearing, the sentencing judge concluded that Benford "was a substantial seller of crack cocaine over a period of time" and that, more specifically, he was responsible for at least 1.5 kilograms of crack cocaine. After adding two levels for his role in the offense and deducting two for acceptance of responsibility, the adjusted offense level was 38. Benford's criminal history category was V. The

---

[1] The motion addressed in this decision was filed as an emergency motion under Northern District of Illinois General Order 20-0012, as amended, which suspended proceedings in court except for emergencies. The undersigned judge has acted as one of four rotating emergency judges, the only judges able to hold court hearings during the period of suspension, which began on March 17, 2020.

presentence report disclosed 1997 convictions for delivery of cocaine, obstructing justice, and misdemeanor theft, resulting in a prison term; another 1997 conviction for possession of cocaine, resulting in a consecutive prison term; and a 1999 misdemeanor conviction for possession of marijuana, resulting in a 30 day jail sentence. The presentence report appears to reflect that the total amount of time that Benford spent in prison on the 1997 convictions was about 15 months (arrested April 26, 1996 on the first charge and paroled on all of the charges on July 18, 1997). He served a 30-day jail term on the 1999 misdemeanor marijuana possession conviction.

Benford's resulting advisory sentencing range was 360 months to life. The sentencing judge imposed a sentence of 360 months, the low end of the range.

In 2007, while Benford's case was on appeal, the Seventh Circuit remanded the case so that the sentencing judge could determine whether a sentence reduction was appropriate under intervening Sentencing Guidelines amendments decreasing the base offense level for crack cocaine offenses or under *United States v. Kimbrough*, 552 U.S. 85 (2007). The government opposed a reduction. The sentencing judge found that Benford was actually responsible for more than 4.5 kilograms of crack cocaine, meaning that his offense level would still be 38 even after considering the Sentencing Guidelines amendments. The judge also declined a sentence reduction under *Kimbrough*, stating that he would have imposed the same sentence even if he had taken into account the Sentencing Guidelines' disparity in their treatment of powder cocaine and crack cocaine.

In February 2017, following a further reduction of the Sentencing Guidelines offense levels for narcotics offenses and the Sentencing Commission's determination to apply the reduction retroactively, the government and Benford filed a joint motion for

reduction of his sentence. The Guidelines amendments had the effect of lowering the offense level to 34, making the advisory sentencing range 235 to 293 months. The parties jointly requested a reduction to the low end, 235 months (the Court notes that under the prevailing interpretation of the Guidelines amendments, a reduction below the low end of the applicable range was not available). The sentencing judge granted the motion and reduced Benford's sentence to 235 months, in other words, about 19 1/2 years.

Benford has now moved for a further reduction under the First Step Act, and he seeks a sentence of time served—which, as indicated, is about 15 years (180 months) at this point. The motion was filed as an emergency motion in light of the coronavirus outbreak at FMC Fort Worth, where Benford is incarcerated, and his susceptibility to serious illness from the virus given a previous medical condition. The undersigned judge, acting as emergency judge under General Order 20-0012, as amended, set an expedited briefing schedule and, on May 1, 2020 held a hearing on the motion, something that only emergency judges can do during the current suspension of most court proceedings.

Benford's motion is filed under section 404(b) of the First Step Act, which states as follows:

> (b) Defendants Previously Sentenced.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

Pub. L. 115-291, 132 Stat. 5194, § 404(b). Section 404(a) of the First Step Act defines "covered offense" as follows:

3

> (a) Definition of Covered Offense.—In this section, the term ``covered offense'' means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010.

*Id.* § 404(a).

The first question is whether the sentencing judge imposed Benford's sentence "for a covered offense" within the meaning of section 404(a). The answer is yes. The judge sentenced Benford for violation of a criminal statute for which the statutory penalties were modified under the Fair Sentencing Act—specifically, by reducing the mandatory minimum sentence from 10 years to 5 and the maximum sentence from life to 40 years. The government contends that in determining whether Benford was sentenced for a covered offense, the Court should look to whether the Fair Sentencing Act affected the sentence in his particular case, which it likely did not. In support of this argument, the government contends that in the phrase, "a violation of a Federal criminal statute, the statutory penalties for which were modified," the words "for which" modify the term "violation," and "violation" should in turn be read as focusing on the particular facts of the defendant's case, not the federal criminal statute he violated.

As this Court has previously stated, this is a tortured and unnatural reading of the statutory language. *United States v. Ervin*, No. 05 CR 471-4, 2020 WL 1923079, at *2 (N.D. Ill. Apr. 21, 2020) (Kennelly, J.). The statutory phrase in question refers to whether "the statutory penalties" were modified, which reflects a focus on the criminal statute that was violated, not on the facts of the defendant's particular case. And the most natural reading of the words "for which" is to take them as referencing the nearest antecedent, which in this case is "a Federal criminal statute." This Court agrees with

4

the majority of judges who have determined that section 404(a) calls for a court to examine whether the penalties for the criminal statute that was violated were modified under the Fair Sentencing Act, not at the facts of the defendant's particular case. And the Seventh Circuit has now definitively resolved the matter, concluding just last week in *United States v. Shaw*, ___ F.3d ___, 2020 WL 2029258 (7th Cir. Apr. 28, 2020), that persons in Benford's position *were* sentenced for "covered offenses" within the meaning of section 404(b) and thus are eligible for a sentence reduction under section 404(b). *See id.* at *3-4.

The next question is whether the Court should reduce Benford's sentence. The Court has reviewed all of the materials submitted in connection with Benford's original sentencing in 2007, the request to reduce his sentence in 2009, and the agreed sentence reduction in 2017, as well as the parties' current submissions and their arguments during the hearing.

The offense that Benford committed was quite severe. He played a significant role in what the sentencing judge found was "a massive drug operation" that involved "huge amounts of controlled substances, [and] hundreds or more purchases of crack cocaine." *United States v. Benford*, No. 04 CR 888-4, Opinion and Order (dkt. no. 359) at 8 (N.D. Ill. Nov. 9, 2009). Benford's crime unquestionably caused significant harm to the communities where he sold the drugs and people living in those communities.

On the other hand, as the presentence report related (from the FBI case agent), he did not have "hidden assets or examples of an ostentatious lifestyle, such as luxury automobiles, jewelry, or property, purchased with drug proceeds," and there was "no evidence of the defendant having possessed or used firearms in furtherance of the

5

instant offense." Presentence Report at 3. In addition, his criminal history, though significant, was somewhat less significant than many or most in Category V. In particular, before this case Benford had been incarcerated only twice, once for just 30 days and once for about 15 months. Finally, the sentencing judge had no hesitation in reducing Benford's sentence from 30 years to just under 20; he did not require briefing or even a hearing before granting the agreed motion to reduce. *See* dkt. no. 450 (entry for Feb. 23, 2017).

At this point Mr. Benford is 46 years old, and he has spent almost one-third of his entire life in prison on the present offense. Although the sentencing judge gave full consideration to the Sentencing Guidelines' crack-powder disparity in 2009, thinking on that issue has evolved considerably since then. The view that the disparity—both the original 100:1 disparity and the later-revised 18:1 disparity—was unwarranted and unfair has now reached the status of a consensus, or nearly so. In addition, Benford has made a significant effort to better himself while incarcerated, an effort well documented in the materials submitted in connection with the present motion. He also continues to have a supportive family, likewise documented in the record.

Last but certainly not least, Benford is nearing the end of his prison time. His "out date" per the Bureau of Prisons is in March 2022, but under standard BOP practice he would be released to a residential reentry center as much as six months before that (or, in the present environment, perhaps even more), and even to home confinement. By reducing Benford's sentence to time served, the Court would be, in effect, cutting perhaps 18 months off his prison time. It can hardly be said that a reduction of this sort would deprecate the seriousness of Benford's offense or would result in undue lenience.

He has served 15 years in prison, a very significant amount of time, and *twelve times* the longest period he had served in custody before the present offense.

In addition, following Benford's release from prison, he will be on supervised release for five years. This means that he will be under a probation officer's supervision and will be subject to being sent back to prison if he goes astray. But given Benford's age and the fact that he has spent nearly a third of his life in custody for the present offenses, there is good reason to hope that he has had enough of prison and thus that he will not return to his previous criminal lifestyle following release. The five-year term of supervised release imposed in the original sentence will enable sufficient monitoring of whether he has, in fact, put his previous criminal behavior behind him. And to help ensure Benford's appropriate reintegration into the community, the Court will amend his supervised release conditions to require 60 days of home detention with location monitoring at the outset of his supervised release term.

In sum, the Court finds that a reduced sentence as set out below will be sufficient, but not greater than necessary, to accomplish the purposes set out in 18 U.S.C. § 3553(a).

## Conclusion

For the reasons stated above, the Court, acting as emergency judge, grants Jerrell Benford's motion for a reduced sentence [467] and reduces his prison sentence to time served, subject to the completion of any quarantine period he is under at FMC Fort Worth. All other terms of the previous judgment remain unchanged, except that the Court modifies the terms of Benford's supervised release to add a requirement that he serve the first 60 days of his release on home detention. Compliance with this condition

shall be monitored by a form of location monitoring technology selected at the discretion of the probation officer, and Benford shall abide by all technology requirements. The Clerk will prepare an amended judgment and commitment order.

Date: May 7, 2020

_____
MATTHEW F. KENNELLY
United States District Judge